UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| EASY PAY SOLUTIONS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 2:24-cv-00106-SDN |
| | ) |
| DAVID S. CROOKS, | ) |
| | ) |
| Defendant. | ) |

# **ORDER**

Plaintiff Easy Pay Solutions, Inc. ("EPS") sued its co-founder and former president, Defendant David S. Crooks, for breach of fiduciary duty. The dispute stems from EPS's relationship with a marketing agent, CoActive. EPS alleges Mr. Crooks, while president, unilaterally signed a document modifying EPS and CoActive's operating agreement. While EPS disputes the validity and effect of this modification, CoActive claims it obligates EPS to pay CoActive in perpetuity. EPS alleges that by signing the document, Mr. Crooks acted against EPS's interest by diverting revenue to a third party without benefit to EPS, and by forcing EPS to incur fees in the ensuing legal dispute between EPS and CoActive. Mr. Crooks now moves to dismiss EPS's claim or stay the claim pending arbitration. ECF No. 13.

## BACKGROUND

### I.  Factual Background[1]

EPS is an electronic payment processing business co-founded by Mr. Crooks that provides credit card transaction hardware and software to merchants. ECF No. 12 at 3, ¶¶ 12–14. Mr. Crooks also served as president of EPS. *Id.* at 3, ¶ 14. On June 29, 2006, EPS contracted with CoActive to "market and distribute" EPS's services to health care providers in return for a portion of the revenue each provider generated for EPS. *Id.* at 4, ¶ 16. EPS and CoActive operated under the "CoActive Agreement," with an initial term of three years. *Id.* at 4, ¶ 16–17. The CoActive Agreement automatically renewed until EPS notified CoActive of its intent to terminate the CoActive Agreement, effective June 28, 2023.[2] *Id.* at 4, ¶¶ 18–23. The CoActive Agreement required EPS to continue paying CoActive residuals for two years after termination of the agreement. *Id.* at 5, ¶ 24.

During the same period, and unbeknownst to EPS or its other directors, officers, or shareholders, Mr. Crooks "executed and delivered to CoActive" a "Clarification" to the CoActive Agreement. *Id.* at 5, ¶ 26. According to EPS, the Clarification modifies EPS's obligations to CoActive under the CoActive Agreement only "in the event EPS sold the company or sold or assigned its merchant portfolio to a third-party purchaser or assignee." *Id.* at 5, ¶ 28. EPS alleges neither event has occurred. CoActive insists the Clarification has a far broader impact, obligating EPS to pay CoActive in perpetuity, beyond two years post-termination—regardless of whether EPS was sold. *Id.* at 6, ¶ 30.

---

[1] I take these facts from EPS's First Amended Complaint, "documents attached to it, and documents expressly incorporated into it." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 72 (1st Cir. 2014). On a motion to dismiss, I assume these facts are true and draw all reasonable inferences from them. *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021).

[2] EPS agreed to amend the CoActive Agreement to modify CoActive's commission share once during that period, on April 29, 2018. *Id.* at 4, ¶ 20.

CoActive did not sign the Clarification, and EPS alleges CoActive provided no consideration to support the Clarification's terms. ECF No. 12 at 6, ¶ 29.[3]

EPS further alleges Mr. Crooks knew the terms of the Clarification were against EPS's best interests, particularly because, according to EPS, CoActive gave EPS "nothing of value" in exchange. *Id.* at 6, ¶ 31–33. Accordingly, EPS claims Mr. Crooks "knowingly and intentionally impaired EPS's earnings indefinitely by diverting substantial EPS revenue to CoActive in perpetuity without any benefit to EPS," and "exposed EPS to substantial attorneys' fees . . . to defend against CoActive's threatened litigation and to enforce the terms of the CoActive Agreement." *Id.* at 6, ¶ 32.

Mr. Crooks eventually resigned from EPS. On March 31, 2021, EPS and Mr. Crooks entered into a "Stock Repurchase Agreement" under which EPS purchased all of Mr. Crooks's shares in EPS, and Mr. Crooks parted ways with the company. *Id.* at 4, ¶ 21. None of EPS's current officers, directors, or shareholders learned of the Clarification until April 2023. *Id.* at 5, ¶ 27.

## II.    Procedural History

EPS sued Mr. Crooks on March 29, 2024, ECF No. 1, and amended its complaint on May 17, 2024, ECF No. 12. On May 31, 2024, Mr. Crooks moved to dismiss or stay the case pending arbitration. ECF No. 13. EPS responded, ECF No. 14, and Mr. Crooks replied, ECF No. 18.

Mr. Crooks argues the Court should dismiss the amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) because he is protected by

---

[3] EPS and CoActive attempted to litigate their dispute over the validity and meaning of the Clarification; this Court ordered EPS and CoActive to proceed to arbitration. *See Easy Pay Sols., Inc., v. Turner*, No. 24-CV-00085, 2025 WL 71703 (D. Me. Jan. 10, 2025).

the business judgment rule's presumption of good faith, the statute of limitations on fiduciary duty claims bars EPS's causes of action, and EPS agreed to waive all claims against Mr. Crooks in the Stock Repurchase Agreement. Mr. Crooks also argues this Court lacks personal jurisdiction over him. Finally, Mr. Crooks argues he is entitled to enforce an arbitration agreement contained in the CoActive Agreement, despite not being a party thereto.

EPS responds that it pleaded sufficient facts to rebut the business judgment rule's presumption of good faith. EPS also argues the statute of limitations did not begin to run until EPS's current directors discovered the Clarification. Moreover, EPS claims it expressly reserved the right to pursue claims for breach of fiduciary duty against Mr. Crooks in the Stock Repurchase Agreement. EPS argues this Court may exercise personal jurisdiction over Mr. Crooks because he purposefully availed himself of the privilege of doing business in Maine, the claim arises from his contacts with Maine, and assertion of jurisdiction is reasonable. Finally, EPS argues that because the "CoActive Agreement itself is unrelated" to EPS's claim, Mr. Crooks may not enforce the CoActive Agreement's arbitration provision against EPS.

## DISCUSSION

Mr. Crooks moves to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive this motion, EPS's complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court takes two steps to determine whether the complaint pleads sufficient facts. First, the Court "identif[ies] and disregard[s] statements in the complaint that merely offer 'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" *Ocasio-Hernandez v.*

*Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (cleaned up). Then, the Court treats the remaining "[n]on-conclusory factual allegations" as true, "even if seemingly incredible." *Id*.

If those factual allegations "permit[] a reasonable inference that the defendant is liable," the claim is plausible and the motion to dismiss must be denied. *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021). The Court's role is not to "attempt to forecast a plaintiff's likelihood of success on the merits," but to determine whether "the inference of liability . . . from the facts alleged" is reasonable. *Ocasio-Hernandez*, 640 F.3d at 13.

A federal court sitting in diversity must apply state substantive law. In doing so, the federal court is "absolutely bound by a current interpretation of [a state law] formulated by the state's highest tribunal." *Daigle v. Maine Med. Ctr., Inc.*, 14 F.3d 684, 689 (1st Cir. 1994). If the state high court has not spoken definitively on the question at hand, the federal court must "discern the rule the state's highest court would be most likely to follow under [the] circumstances, even if [the federal court's] independent judgment might differ." *Ambrose v. New England Ass'n of Sch. & Colleges, Inc.*, 252 F.3d 488, 497–98 (1st Cir. 2001). In this case, the parties agree Nevada law governs EPS's breach of fiduciary duty claim. *See* ECF No. 13 at 3; ECF No. 14 at 7.

Under Nevada law, corporate officers may be liable for damages resulting from their breaches of fiduciary duty. *Guzman v. Johnson*, 483 P.3d 531, 535 (Nev. 2021). The "sole method for holding individual [officers or] directors liable for corporate decisions" is for a plaintiff to "satisfy *both* requirements" of Nevada Revised Statutes § 78.138(7). *Id*. at 536 (emphasis added). Subsection (7) of the statute "requires a claimant to (1) rebut the business judgment rule and (2) demonstrate a breach of fiduciary duty involving intentional misconduct, fraud, or another knowing violation of the law." *Id*.

5

Mr. Crooks argues EPS both failed to rebut the business judgment rule under the first prong of subsection (7) and failed under the second prong of subsection (7) "to show that Mr. Crooks breached his fiduciary duty" or "engaged in intentional misconduct, fraud, or knowing violation of law." ECF No. 13 at 4–5.

### I. Business Judgment Rule (Subsection (3) Presumption)

The Nevada business judgment rule, which forms the first prong of the subsection (7) analysis, is codified at § 78.138(3) and provides that "directors and officers, in deciding upon matters of business, are presumed to act in good faith, on an informed basis and with a view to the interests of the corporation." Nev. Rev. Stat. § 78.138(3) (2025). Subsection (7) therefore refers to the business judgment rule as "the presumption established by subsection 3." *Id.* § 78.138(7).

### A. Interpreting Subsection (3)

To dutifully apply Nevada law, this Court first explains what each element of subsection (3) means. The latter two elements of subsection (3)—the duties to act with an informed basis and a view to the interests of the corporation—are synonymous with the fiduciary duties of care and loyalty. *Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1178 (Nev. 2006) ("[T]he duty of care consists of an obligation to act on an informed basis; the duty of loyalty requires the board and its directors to maintain, in good faith, the corporation's and its shareholders' best interests over anyone else's interests."), *abrogated on other grounds by Guzman*, 483 P.3d 531.

Generally, Nevada courts interpret the first element of subsection (3)—the duty to act in good faith—by reference to the other two duties. That is, an officer or director breaches the duty of good faith by breaching either the duty of loyalty or the duty of care. In *Capital Advisors v. Cai*, the Nevada Supreme Court explained a plaintiff can rebut the

6

presumption of good faith by showing "the director or officer 'had a personal interest in the transaction' or by showing 'that the director failed to exercise due care in reaching the decision.'" *Cap. Advisors, LLC v. Cai*, 548 P.3d 1202, 1208 (Nev. 2024) (emphasis added) (citation omitted) (first quoting *Guzman*, 483 P.3d at 537; and then quoting *Wynn Resorts, Ltd. v. Eighth Jud. Dist. Ct.*, 399 P.3d 334, 343 (Nev. 2017)). A plaintiff establishes the prerequisite for liability under subsection (7) by rebutting at least one element of subsection (3). *Id.* at 1208–09 (finding plaintiffs rebutted the business judgment rule as to one defendant who breached the duty of loyalty by having "a personal interest" in the challenged transaction and another defendant who "did not exercise due care.").

### B. Applying Subsection (3)

When applying the business judgment rule under subsection (3), the Court may not inquire into the "substantive reasonableness" of a director or officer's business decision. *Wynn Resorts*, 399 P.3d at 343. The Court's inquiry is limited to "procedural indicia" of whether the disinterested director or officer "resorted in good faith to an informed decisionmaking process." *Id.* (quoting *WLR Foods, Inc. v. Tyson Foods, Inc.*, 857 F. Supp. 492, 494 (W.D. Va. 1994)). Subsection (3) therefore "prevents courts from 'substitut[ing] [their] own notions of what is or is not sound business judgment.'" *Id.* (quoting *Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 720 (Del. 1971)).

The only procedural impropriety EPS alleges is that Mr. Crooks acted outside his authority and failed consult any "other officers, directors, or shareholders" before signing the Clarification because, according to EPS, Mr. Crooks knew EPS's board would not approve. ECF No. 12 at 5–6, ¶¶ 26, 33. This bald assertion of a limitation on Mr. Crooks's authority does not rebut the presumption that Mr. Crooks acted with a view to the

7

interests of the corporation. EPS did not allege that Mr. Crooks privileged his own interests over the corporation's, or any facts to support the same. *See Shoen*, 137 P.3d at 1178 ("[T]he duty of loyalty requires [fiduciaries] to maintain, in good faith, the corporation's and its shareholders' best interests over anyone else's interests."); *In re Newport Corp. S'holder Litig.*, 507 P.3d 182, 2022 WL 970210, at *2 (Nev. 2022) (explaining that to rebut business judgment rule through the duty of loyalty, a plaintiff must show the fiduciary was "self-interest[ed]" in the transaction).

EPS claims only that, "[u]under the circumstances," Mr. Crooks knew the Clarification's terms were "against the interests of the company." ECF No. 12 at 6, ¶ 33. According to EPS, Mr. Crooks knew EPS did not have retirement plans for any other employee and therefore knew the board would not have approved the Clarification. *Id.*

While this allegation is couched in language that calls into question Mr. Crooks's dedication to EPS's interests, the allegation fails to put forward any "*procedural* indic[ation]" that Mr. Crooks acted in his own self-interest. *Wynn Resorts*, 399 P.3d at 343 (emphasis added). Instead, EPS asks the Court to infer from the terms of Mr. Crooks's challenged business decision itself that Mr. Crooks could not have acted in EPS's interest. This is precisely what the business judgment rule prohibits. *Wynn Resorts*, 399 P.3d at 343 ("Nevada's statutory business judgment rule precludes courts from reviewing the substantive reasonableness of a[n] [officer or director's] business decision . . . .").

Mr. Crooks's failure to consult with the board does not by itself rebut the business judgment rule's presumption of due care. Mr. Crooks was President of EPS when he signed the Clarification. ECF No. 12 at 3, ¶ 14. EPS does not allege any facts suggesting Mr. Crooks was required to obtain the approval of other officers, directors, or shareholders before entering into contracts on behalf of EPS. Indeed, the CoActive

8

Agreement, which Mr. Crooks signed on behalf of EPS, demonstrates Mr. Crooks had authority to enter into contracts for EPS. *See* ECF No. 12-1 at 15. Therefore, EPS's conclusory allegation that Mr. Crooks signed the Clarification "in excess of his authority" is inadequate to rebut the business judgment rule. ECF No. 12 at 5, ¶ 26; *see Ocasio-Hernandez*, 640 F.3d at 12.

To be sure, the Nevada Supreme Court has held that courts may consider certain procedural aspects of a fiduciary's consultation with outside counsel when evaluating the business judgment rule's due care presumption. *See Wynn Resorts*, 399 P.3d at 343. Such indicia include the "qualifications of any sources of information or advice," the "general topics" of the information sought, and "whether advice was actually given." *Id.* (quoting *WLR Foods*, 857 F. Supp. at 494). However, the fact that a fiduciary's reliance on outside counsel supports a finding of due care does not imply the inverse proposition: that a fiduciary's failure to consult outside counsel rebuts the statutory presumption of due care. Even if it did, EPS does not allege Mr. Crooks failed to consult with outside counsel or disregarded any consultation he may have conducted. Instead, EPS alleges Mr. Crooks failed to obtain internal approval, without any indication that he was so required.

Failure to obtain internal approval cannot, on its own, rebut the business judgment rule's presumption of due care. Section 78.138(2) contemplates officers and directors taking advice and relying on information from a diverse array of sources, including counsel, accountants, and bankers, as well as other officers and directors. Nev. Rev. Stat. § 78.138(2). Subsection (3)'s business judgment rule presumes officers and directors do so. *Id.* § 78.138(3). But nothing in the statute requires an officer or director to seek advice from any particular one of those sources in order to comply with the rule. Nor does the statute require an officer or director to seek board approval for their conduct. Such a rule

9

would contravene the underlying purpose of the business judgment rule—to limit court interference with corporate decision making. *See Wynn Resorts*, 388 P.3d at 344.

Because EPS does not allege facts from which the Court can infer that Mr. Crooks acted out of self-interest or without due care, the Court finds EPS failed to rebut the business judgment rule's presumption. That alone precludes liability under § 78.138 and warrants dismissal. *See Guzman*, 483 P.3d at 536.

## II. Subsection (7)(b)

The Court also finds that EPS failed to sufficiently allege a breach of fiduciary duty under the second prong of subsection (7). *See Chur v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 458 P.3d 336, 341 & n.4 (Nev. 2020) (addressing second prong as an independent basis to bar liability). An officer's act constitutes a breach of fiduciary duty when the duty exists, the director or officer breaches it, and damages result.[4] *Guzman*, 483 P.3d at 538. Subsection (7) also imposes an additional requirement on breach of fiduciary duty claims, only allowing liability where the breach involves "intentional misconduct, fraud or a knowing violation of law." Nev. Rev. Stat. § 78.138(7)(b)(2).

EPS does not sufficiently allege Mr. Crooks breached his fiduciary duties through a "knowing violation of law" or "intentional misconduct."[5] *Id*. "[I]n order to show a 'knowing violation of law' or 'intentional misconduct,'" a plaintiff "must establish that the director or officer had knowledge that the alleged conduct was wrongful." *Chur*, 458 P.3d at 342. This is a high standard. Courts generally cannot infer knowledge without "well-pled, particularized allegations of fact" detailing a fiduciary's "precise role" at a company

---

[4] Mr. Crooks does not contest that he owed EPS a duty or that EPS suffered damages.
[5] EPS does not claim Mr. Crooks's actions amount to fraud.

10

and "the information that would have come to their attention" in that role. *In re ZAGG Inc. S'holder Derivative Action*, 826 F.3d 1222, 1234 (10th Cir. 2016) (quoting *Guttman v. Huang*, 823 A.2d 492, 503 (Del. Ch. 2003)), *cited with approval in Chur*, 458 P.3d at 341–42. For example, in *Chur*, the Nevada Supreme Court found the plaintiff's allegation that the defendant directors knew certain information was inaccurate and therefore "could not be relied on" was inadequate to show knowledge of wrongfulness in the director's subsequent reliance on that information. *Chur*, 458 P.3d at 342 & n.5. In *Capital Advisors*, the Nevada Supreme Court found the defendants knew the wrongfulness of their actions only because they "had knowledge of [their company's] code of ethics," which prohibited exactly the "self-interested and related-party transactions" the defendants engaged in. *Cap. Advisors*, 548 P.3d at 1210.

As an initial matter, EPS does not claim Mr. Crooks broke any law by entering into the Clarification on behalf of EPS. Therefore, EPS must allege Mr. Crooks engaged in "intentional misconduct." Nev. Rev. Stat. § 78.138(7)(b). While § 78.138(7)(b) does not define "misconduct," Nevada courts have found subsection (7)(b) satisfied only in situations involving a potential violation of law or transparent self-dealing. *See Cap. Advisors*, 548 P.3d 1209–10 (defendant "knew the challenged loan was a potential violation of federal law"); *Brinkerhoff v. Foote*, 387 P.3d 880 (Nev. 2016) (finding substantial evidence supported breach of fiduciary duty claim where defendant "retain[ed] funds left over from the company's sale" for himself instead of distributing them to the other shareholder); *In re Amerco Derivative Litig.*, 252 P.3d 681, 701 (Nev. 2011) (allegation that "one of AMERCO's executive officers[] was materially self-interested in the transfer of AMERCO assets and opportunities to the SAC entities due to [the officer's] ownership and control of the SAC entities" stated a claim under subsection

11

(7)(b)). EPS cites no Nevada authority for the proposition that what Mr. Crooks did was wrongful.

Indeed, EPS's argument is disjointed, as it both claims Mr. Crooks engaged in misconduct by signing the Clarification, and argues the Clarification has no legal effect. ECF No. 12 at 5, ¶ 28 ("The [Clarification] purports to address certain EPS obligations to CoActive . . . in the event EPS sold the company . . . ."); ECF No. 14 at 4 n.2 ("EPS did not sell the company . . . ."). The crux of EPS's claim relies on a third party's assertion of alleged rights created by the Clarification, not Mr. Crooks's decision to sign the Clarification. ECF No. 12 at 6, ¶ 30 ("[I]n reliance upon the [Clarification], CoActive insists that EPS must continue sharing revenues with CoActive . . . and CoActive has since threatened EPS with litigation to enforce its *claimed* right to perpetual payment." (emphasis added)).

Even assuming Mr. Crooks did engage in misconduct, EPS does not make "particularized allegations of fact" that Mr. Crooks knew his conduct was wrong. *In re ZAGG*, 826 F.3d at 1234. As with the business judgment rule, EPS asks the Court to infer from Mr. Crooks's failure to consult with the board that he knew his conduct was wrong.

That is not enough. Because EPS does not allege Mr. Crooks had a legal duty to consult with the board before signing contracts on behalf of EPS, his failure to do so is neither gross negligence, *Chur*, 458 P.3d at 342 (explaining gross negligence involves "reckless disregard of a legal duty" (quoting *Black's Law Dictionary* (11th ed. 2019))), nor knowing wrongfulness, *id.* (explaining knowledge is an "appreciably higher standard" than gross negligence). Moreover, even if Mr. Crooks did have a legal duty to consult with the board and his failure to do so constituted gross negligence, that alone would not

12

amount to a breach of his fiduciary duty. *id.* at 341 (holding gross negligence does not constitute breach of fiduciary duty).

Therefore, because EPS does not allege particularized facts from which the Court can infer Mr. Crooks "had knowledge that the alleged conduct was wrongful," EPS cannot show a "'knowing violation of law' or 'intentional misconduct.'" *Id.* at 342. Because EPS must do so to establish liability under § 78.138, EPS has failed to state a claim.

## CONCLUSION

Because EPS neither rebuts the business judgment rule nor alleges facts establishing Mr. Crooks breached his fiduciary duties through intentional misconduct or a knowing violation of law, the Court need not address Mr. Crooks's alternative arguments. For the foregoing reasons, his motion to dismiss is **GRANTED**.

**SO ORDERED.**

Dated this 28th day of March, 2025.

/s/ Stacey D. Neumann
U.S. DISTRICT JUDGE

13